UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO DISMISS (DKT. 44); DEFENDANTS' REQUEST TO STRIKE PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY (DKT. 57)**

I.  **Introduction**

On October 30, 2017, Daniela Prodanova filed this putative class action. Dkt. 1. On February 6, 2018, Panthera Investment Fund L.P. ("Panthera" or "Plaintiff") was designated as lead plaintiff. Dkt. 37. On February 27, 2018, Panthera filed the First Amended Complaint ("FAC" (Dkt. 40)). It alleges that H.C. Wainwright & Co., LLC ("H.C."), its Chief Executive Officer Mark Viklund ("Viklund"), and one of its analysts, Oren Livnat ("Livnat") (collectively, "Defendants") sought to inflate the price of shares of MannKind Corporation ("MannKind"). FAC, Dkt. 40 ¶ 1. The FAC advances a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against H.C. and Livnat, and a claim for control person liability in violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t-1(a). *See id.* ¶¶ 68-81. Plaintiff brings this action on behalf of a putative class of "all other persons or entities that purchased MannKind securities between 4:03 AM Pacific Time on October 10, 2017 (7:03 AM Eastern Time) and 9:02 PM Pacific Time on October 10, 2017 (12:02 AM Eastern Time on October 11, 2017)."[1] *Id.*

On March 26, 2018, Defendants filed a motion to dismiss the FAC ("Motion" (Dkt. 44)). Plaintiff filed an opposition (Dkt. 49) and. Defendants filed a reply. Dkt. 51. Based on a determination that, pursuant to Local Rule 7.15, that the issues raised by the Motion could be decided without a hearing, it was taken under submission. Dkt. 54.

For the reasons stated in this Order, the Motion is **GRANTED**, without prejudice.

---

[1] The period between 4:03 AM Pacific Time and 9:02 PM Pacific Time on October 10, 2017 is defined as the Class Period in the FAC. *See id.* ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

**II.     Background**

      A.     Request for Judicial Notice

In support of the Motion, Defendants requested judicial notice of the following documents:

| | |
|---|---|
| Ex. A | H.C. Wainwright & Co. Website, Services Page, http://www.hcwainwright.com/services; |
| Ex. B | Company Overview of H.C. Wainwright & Co. LLC, Bloomberg, https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapid=20819; |
| Ex. C | H.C. Wainwright & Co. Website, Research Page, http://www.hcwainwright.com/services/research; |
| Ex. D | H.C. Wainwright & Co. Website, Meet Our Analysts Page, http://www.hcwainwright.com/services/research/meet-our-analysts; |
| Ex. E | Firms We Regulate (H & L Equities, LLC *through* Halliday Financial, LLC), FINRA, https://www.finra.org/about/firms-we-regulate; |
| Ex. F | About FINRA, FINRA, https://www.finra.org/about; |
| Ex. G | FINRA Rulemaking Process, FINRA, https://www.finra.org/industry/finra-rulemaking-process; |
| Ex. H | FINRA Rule 2241: Research Analysts and Research Reports, FINRA, https://finra.complinet.com/en/display/display_main.html?rbid+2403&element_id=11946; |
| Ex. I | Equity Research Company Update: MannKind Corporation, Maxim Group (October 2, 2017); |
| Ex. J | MannKind Corporation Stock Chart, NASDAQ, https://charting.nasdaq.com/ext/charts.dll?2-1-14-0-0-548-03NA000000MNKD-&SF:1|5-BG+FFFFFF-BT=0-HT=395--XTBL- (accessed March 22, 2018); |
| Ex. K | Transcript of Q2 2017 Earnings Call re: MannKind Corp., FactSet CallStreet, LLC (August 7, 2017); |
| Ex. L | Press Release: FDA Updates Afrezza® Prescribing Information: Now Includes New Data Regarding Rapid Onset of Activity and Duration of Effect, MannKind Corporation (October 2, 2017); |
| Ex. M | Transcript of Business Update Call re: MannKind Corp., FactSet CallStreet, LLC (October 2, 2017); |
| Ex. N | Equity Research Price Target Update: MannKind Corporation, Maxim Group (October 6, 2017); |
| Ex. O | MannKind Corporation Equity Research Report, H.C. Wainwright & Co. (October 10, 2017); |
| Ex. P | Transcript of Q1 Earnings Call re: MannKind Corp., FactSet CallStreet, LLC (May 10, 2017); |
| Ex. Q | Powerpoint Presentation: Rodman & Renshaw 19th Annual Global Investment Conference, MannKind Corporation (September 11, 2017); |
| Ex. R | Powerpoint Presentation: Cantor Global Healthcare Conference, MannKind Corporation (September 25, 2017); and |
| Ex. S | Email from Oren Livnat re: H.C. Wainwright / MNKD: A Breath of New Life With |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

           Afrezza Turnaround Story; Initiate With Buy and $7 Target (October 10, 2017, 7:00:51 AM).

Dkt. 45 ("RJN").

Defendants also sought judicial notice of the following news articles and webpages:

| | |
|---|---|
| Ex. 1 | *Maxim Likes MannKind, Sees 33% Upside*, SeekingAlpha.com (Oct. 6, 2017), https://seekingalpha.com/news/3299798-maxim-likes-MannKind-sees-33-percent-upside; |
| Ex. 2 | *MannKind Stock Seen Reaching $7*, Barrons (Oct. 6, 2017), https://www.barrons.com/articles/MannKind-stock-seen-reaching-7-1507632572; |
| Ex. 3 | George Budwell, *Why MannKind Corporation Stock Is Jumping Today*, Motley Fool (Oct. 10, 2017), https://www.fool.com/investing/2017/10/10/why-mannkind-corporation-stock-is-jumping-today.aspx; |
| Ex. 4 | Bryan Anderson, *H.C. Wainwright Sticks to Its Buy for Arch Therapeutics Inc.*, Markets (June 12, 2017), http://www.markets.co/h-c-wainwright-sticks-to-its-buy-rating-for-arch-therapeutics-inc/79550/; |
| Ex. 5 | *What Is a Target Price? The Street Definition*, TheStreet.com, https://www.thestreet.com/topic/47225/target-price.html; |
| Ex. 6 | *Analyst Research Summary*, NASDAQ, https://www.nasdaq.com/quotes/analyst-research.aspx; and |
| Ex. 7 | *MannKind: Celsion Shares Skyrocket Before TASE Delisting*, 4-Traders.com (Oct. 9, 2017), http://www.4-traders.com/MANNKIND-CORPORATION-34185045/news/MannKind-Celsion-shares-skyrocket-before-TASE-delisting-25242410/. |

*Id.*[2]

      1.    <u>Legal Standards for Judicial Notice</u>

A factual matter is subject to judicial notice if it "is not subject to reasonable dispute" because it is "generally known" within the jurisdiction or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court "may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, judicial notice is appropriate as to the fact that certain statements were made and certain information was accessible to the public, but not as to the truth of those statements. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *see, e.g.*, *Curry v. Hansen Med., Inc.,* No. 09-cv-5094, 2012 WL 3242447, at *3 (N.D. Cal. Aug. 10, 2012) ("The Court takes judicial notice of . . . the conference calls for the fact that they were made on the dates specified, but not for the truth of the matters asserted therein.").

---

[2] Copies of screenshots of these websites were not submitted as exhibits to the RJN. The exhibit numbers were assigned to the websites in the order they were listed in the RJN.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

After the Motion and the RJN were taken under submission, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) was published.[3] *Khoja* reversed the dismissal of a securities fraud class action, concluding that the district court erred by considering extrinsic evidence. This reaffirmed the rule that material outside the pleadings may not be considered in connection with a motion to under Fed. R. Civ. P. 12(b)(6), unless they are either incorporated by reference in the operative complaint, or subject to judicial notice. *Id.* at 998-99. *Khoja* "note[d] a concerning pattern in securities cases like this one: exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* at 999. Thus, because a complaint in a securities fraud action is subject to a heightened pleading standard under Fed. R. Civ. P. 9, and because defendants in such actions often "possess materials to which the plaintiffs do not yet have access," *Khoja* cautioned against allowing defendants "to present their own version of the facts at the pleading stage." *Id.*

        2.        <u>Documents to Which Plaintiff Does Not Object (Exs. H, J, O, S)</u>

Plaintiff does not object to judicial notice of Exhibits H, J, O, and S. Dkt. 50 at 2. Exhibits O and S are incorporated by reference into the FAC, Exhibit H is a rule promulgated by the Financial Industry Regulatory Authority ("FINRA"), and Exhibit J contains information that can accurately and readily be verified from sources whose accuracy cannot readily be questioned. Thus, the request for judicial notice is **GRANTED** as to these exhibits.

        3.        <u>Documents to which Plaintiff Objects</u>

            a.    <u>News Articles (Exhibits 1-7)</u>

Exhibits 1-4 and 7 are online news articles. Exhibit 5 is a page on the website "The Street," on which the term "target price" is defined. Exhibit 6 is a page from the NASDAQ website on which a user can search for statements by analysts about certain companies. Defendant argues that these may be judicially noticed solely as to whether this information was publicly available in the market in early October 2017 and not whether it was true. Dkt. 52 at 5. Plaintiffs argue that Defendants have not established that these materials are authentic or that they reflect the same information that was available during the relevant time period. Dkt. 50 at 4-5.

It is appropriate to "take judicial notice that the market was aware of the information in news articles submitted by the defendants." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). The articles at issue in *Heliotrope* included the dates on which each was published. *See id.* at 981 (citing articles in the Corporate & Financial Weekly Digest and Wall Street Journal). Further, "[c]ourts may take judicial notice of publications," such as "newspapers, magazines, and books," "to

---

[3] On August 17, 2018, Plaintiff filed a Notice of Supplemental Authority that cited *Khoja*. *See* Dkt. 56 ("Notice"). On August 21, 2018, Defendants filed a Request to Strike Plaintiff's Notice of Supplemental Authority. Dkt. 57 ("Request"). Defendants contend that the Notice improperly included four pages of additional argument. *See id.* at 2. A notice of supplemental authority should include only a copy of or citation to a recently published case, and should not include additional arguments unless leave to do so is granted. *See Nichols v. Harris*, 17 F. Supp. 3d 989, 996 n.3 (C.D. Cal. 2014). Accordingly, the Request is **GRANTED IN PART**. The Notice is accepted only for its citation to *Khoja*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07926 JAK (ASx) | | Date | December 11, 2018 |
|---|---|---|---|---|
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | | |

'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

Exhibits 1-4 and 7 are news articles published on public websites and blogs that show a date of publication. Plaintiffs have not shown that the content of these articles when accessed today is different than it was at the stated time of publication, or that the articles were not published those dates. Therefore, it is appropriate to "take judicial notice that the market was aware of the information in the news articles submitted by defendants." *Heliotrope*, 189 F.3d at 981 n.18.

For these reasons, the request for judicial notice is **GRANTED** as to Exhibits 1-7.

b. H.C.'s Website (Exhibits A, C, D)

Exhibits A, C, and D are screenshots of certain pages on H.C.'s website. They include information about the company, its services and its analysts, including Livnat. The parties present the same arguments discussed above as to the news articles. Defendants seek judicial notice of the fact that the information on these webpages was publicly available in early October 2017.

The copies submitted with the Motion do not state the date on which the webpages were accessed. Nor is there other evidence as to the date(s) on which they were available in this format.[4] Because these pages are under the control of at least one of the Defendants, and the timing of their publication has not been established, what was present on the H.C. website in October 2017 has not been shown to be something about which there is no reasonable dispute. Therefore, the request for judicial notice is **DENIED** as to Exhibits A, C, and D.

c. Bloomberg Overview of H.C. (Exhibit B)

Exhibit B is a screenshot of a page from the Bloomberg website that contains an overview of H.C. Defendant seeks judicial notice that the information contained on this webpage was available to the public in October 2017. The copy provided by Defendants refers to an access on March 22, 2018 at 11:05 a.m. It also includes links to several articles about H.C. that were published after December 2017, as well as a statement that H.C. filed for bankruptcy in December 2017. Collectively, this supports the inference that the page of the website has been modified since October 2017. For these reasons, the request for judicial notice is **DENIED** as to Exhibit B.

d. FINRA's Website (Exhibits E, F, G)

Exhibits E, F, and G are copies of screenshots of certain webpages on the FINRA website. Exhibit E identifies certain firms regulated by FINRA. This list of firms includes H.C. Exhibit F is a copy of a page with information about FINRA's role in regulating broker-dealers. Exhibit G describes the process by which FINRA adopts rules. Plaintiffs argue that Defendants seek to rely on these materials for the truth

---

[4] Defendants contend that this "general information . . . has remained unchanged for many years." Dkt. 52 at 8 n.5. However, they have not provided any evidence in support of this conclusory statement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07926 JAK (ASx) | | Date | December 11, 2018 |
|---|---|---|---|---|
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | | |

of the matters asserted, *i.e.*, that FINRA regulates H.C. and has strict requirements to assure unbiased reports. Defendants respond that courts routinely take judicial notice of such documents produced by FINRA because they are easily verifiable and not subject to reasonable dispute.

"It is not uncommon for courts to take judicial notice of factual information found on the world wide web. This is particularly true of information on government agency websites, which have often been treated as proper subjects for judicial notice." *Paralyzed Veterans of Am. v. McPherson*, No. 06-cv-4670-SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (internal quotations and citation omitted). FINRA is a self-regulatory organization, as defined in the Securities Exchange Act of 1934, *see* 15 U.S.C. §§ 78c(a)(26), 78s(b), which is "responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation . . . ." *Sacks v. S.E.C.*, 648 F.3d 945, 948 (9th Cir. 2011) (alteration in original). FINRA has the authority to propose rules to govern its member firms and associated individuals. Such rules are subject to approval by the SEC. *See id.*; 15 U.S.C. § 78s(b)(1); 17 C.F.R. § 200.30-3(a)(12). Accordingly, courts routinely take judicial notice of materials submitted to, or promulgated by, FINRA. *See, e.g.*, *Sullivan v. SII Investments, Inc.*, No. 18-cv-00666, 2018 WL 983945, at *2 n.6 (N.D. Cal. Feb. 20, 2018); *Freeney v. Bank of Am. Corp.*, No. 15-cv-02376, 2015 WL 12535021, at *18 (C.D. Cal. Nov. 19, 2015).

For the foregoing reasons, judicial notice is **GRANTED** as to Exhibits E, F, and G.

   e. <u>Press Release (Exhibit L)</u>

Exhibit L is a copy of a press release issued by MannKind on October 2, 2017. "Courts in the Ninth Circuit routinely take judicial notice of press releases." *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) (citing cases); *see also Mellen v. City of Los Angeles*, No. 15-CV-3006, 2016 WL 7638207, at *3 (C.D. Cal. Dec. 22, 2016) ("A court may take judicial notice of . . . press releases to show that the market . . . was aware . . . of information contained" therein." (internal quotation marks omitted)). The date of publication of this press release appears on the document itself. Therefore, there is no reasonable dispute as to the date of its release or its availability to the public. Moreover, Defendants do not seek judicial notice of the truth of the matters stated in the press release. Instead, they are cited solely to show that MannKind provided information to the public. This is a response to Plaintiff's contention that Defendants concealed relevant information from the market. Dkt. 52 at 5-6; *see also Am. Apparel*, 855 F. Supp. 2d at 1062 ("Courts in the Ninth Circuit routinely take judicial notice of press releases" in securities fraud actions).

For these reasons, the request for judicial notice is **GRANTED** as to Exhibit L.

   f. <u>Presentations and Transcripts of Conference Calls (Exhibits K, M, P, Q, R)</u>

Exhibits K, M, and P are transcripts of conference calls held by officers of MannKind with investors. Exhibits Q and R are slides from presentations made by MannKind representatives at certain conferences. Defendants argue that courts routinely take judicial notice of such documents with respect to what information was available to the market. Dkt. 52 at 11. *See, e.g.*, *SEC v. Mozilo*, No. 09-cv-3994-JFW, 2009 WL 3807124, at *7 n.2 (C.D. Cal. Nov. 3, 2009); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 864 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

2004). Plaintiff argues that Defendant has failed to authenticate these exhibits or demonstrate that they are not subject to reasonable dispute. Dkt. 50 at 6-7.

*Khoja* addressed whether judicial notice of a transcript of a conference call with investors was appropriate, and concluded that while such transcripts generally qualify under Rule 201(b) as documents whose accuracy cannot reasonably be questioned, such accuracy "is only part of the inquiry." *See Khoja*, 899 F.3d at 999. "A court must also consider—and identify—which fact or facts it is noticing from such a transcript. Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth. *Id.* Specifically, *Khoja* concluded that the district court improperly relied on a conference call transcript to conclude that investors knew certain facts prior to the allegedly actionable misstatements in that case, when it was unclear from the transcript what specific facts had been disclosed during the relevant call. *See id.* Here, as in *Khoja*, Defendants seek judicial notice of certain MannKind conference calls and presentation records to establish what investors knew about MannKind's intent to recapitalize prior to its issuance of a stock offering. *See* Dkt. 45 at 6. Defendants have neither authenticated the transcripts of the conference call nor demonstrated that the statements in them are "not subject to reasonable dispute." *See* Fed. R. Evid. 201(b).

For these reasons, and because the transcripts are not necessary to the resolution of the Motion the request for judicial notice is **DENIED** as to Exhibits K, M, P, Q, and R.

> g.  Research Reports (Exhibits I, N)

Exhibits I and N are research reports on MannKind prepared by the Maxim Group. Plaintiff argues that judicial notice of these reports is not appropriate because they are neither incorporated by reference in the FAC nor "necessary to the resolution of" the Motion. Dkt. 50 at 5. The incorporation by reference doctrine does not apply to these documents. *See Khoja*, 899 F.3d at 1002 ("a defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'") (quoting *Ritchie*, 342 F.3d at 907)). Moreover, they have not been authenticated. Finally, it is unnecessary to consider them to decide the Motion. *See, e.g., City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059-60 (N.D. Cal. 2012).

For these reasons, the request for judicial notice is **DENIED** as to Exhibits I and N.

> B.  Factual Background
>
> > 1.  The Parties

The FAC alleges that H.C. is a leading investment bank that focuses on the healthcare industry. *See* FAC ¶ 2. It is also alleged that Livnat is employed by H.C. as a Managing Director and Securities Analyst, and that he focuses on pharmaceuticals equity research. *Id.* ¶ 15. he allegedly authored the report and stock price target recommendation that forms the primary basis of Plaintiff's claims. *Id.* ¶¶ 1-2. It is alleged that Viklund is the Chief Executive Officer ("CEO") of H.C. *Id.* ¶ 12. He is allegedly the primary contact for H.C.'s Investment Banking Services and Research Services departments. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

Panthera is the lead Plaintiff. *Id.* ¶ 11. It allegedly purchased MannKind securities during the Class Period. *Id.* ¶¶ 1, 11.

        2.        <u>Allegations in the FAC</u>

The FAC alleges that MannKind is a publicly-traded biopharmaceutical company headquartered in Westlake Village, California. *Id.* ¶ 25. It is alleged that it researches, develops and commercializes inhaled therapeutic products that are used by patients with certain medical conditions. *Id.* The FAC alleges that Affreza, an inhaled insulin used to treat diabetes, is presently the only FDA-approved product of MannKind. *Id.*

The FAC alleges that, on October 9, 2017, MannKind's stock closed at $5.33 per share, on a daily trading volume of 13.22 million shares. *Id.* ¶ 29. It is alleged that, on the following day, H.C. released a report, authored by Livnat, entitled "A Breath of New Life with Afrezza Turnaround Story; Initiate with Buy and $7 Target" (the "Report"). *Id.* ¶ 31-33.[5] It is alleged that the Report was issued at 6:17 a.m. on October 10, 2017. *Id.* ¶ 31. The Report allegedly assigned a "Buy" rating to MannKind stock and a target share price of $7. *Id.*[6] This price is allegedly 30% higher than the MannKind stock's prior day closing price. *Id.* ¶ 30.

The Report allegedly contained certain statements about MannKind. They included that "we and the market expect a near-term recapitalization" and that "near-term recapitalization and dilution" would occur. *Id.* ¶ 33. It also noted that "[r]ecapitalizing the company is a primary objective [of] new MannKind management, and we expect near-term equity and debt financing to fund continued operations." *Id.*

It is alleged that, due to the publication of the Report, including the $7 stock price target, MannKind shares rose approximately 26% on October 10, 2017, and closed at $6.71. *Id.* ¶ 38. It is further alleged that MannKind's trading volume increased to 48.23 million shares. *Id.* This was allegedly more than three times higher than the previous day's trading volume, and more than nine times the average daily volume for the preceding three months. *Id.* ¶¶ 27, 38.

The FAC alleges that, at 9:02 p.m. on October 10, 2017, MannKind announced a registered offering of common stock at a price of $6 per share (the "Offering"). *Id.* ¶ 39. It is alleged that H.C. would serve as the exclusive placement agent for the Offering, pursuant to an agreement signed by Viklund, on behalf of H.C., and Michael Castagna, MannKind's CEO. *Id.* Pursuant to that agreement, MannKind allegedly agreed to pay H.C. a cash fee equivalent to 5% of the gross proceeds derived from the Offering. *Id.*

The FAC alleges that, in response to the announcement of the Offering, MannKind stock fell 18.5% from $6.71 to $5.47 per share during trading on October 11, 2017. *Id.* ¶ 40.

The FAC alleges that, by publishing the Report without disclosing the pending Offering, H.C.

---

[5] The Report is attached to the Motion at Exhibit O to the Declaration of Adam Itzkowitz ("Itzkowitz Decl."), Dkt. 44-17.

[6] The Complaint alleges that at 4:03 a.m., two hours prior to the publication of the Report, Livnat authored a "Note" which also referred to the MannKind stock, assigned a "Buy" rating and a $7 per share target price. *Id.* ¶ 30. However, the FAC does not allege the form of the Note or where it was published.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

fraudulently misled investors and artificially inflated MannKind's stock price during trading on October 10. *See id.* ¶¶ 1-4, 44. It is alleged that H.C., Livnat, and Viklund each knew that, less than a day after the issuance of the Report, MannKind would announce an Offering at a negotiated price that would be materially lower than the target price set forth in the Report. *Id.* ¶¶ 45-48.

       3.       Additional Information Submitted By Defendants

            a.    Judicial Notice

As discussed above, judicial notice has been taken of certain documents. This does not convert a motion to dismiss to one for summary judgment. *See Lee*, 250 F.3d at 688-89.

            b.    FINRA Regulations

Defendants assert that H.C. is a member organization of the Financial Industry Regulatory Authority ("FINRA"). *See* Ex. E to Itzkowitz Decl., Dkt. 44-7. As noted, FINRA is a self-regulating body within the financial industry. It has the authority to propose rules governing its member firms and associated persons. Those rules are subject to approval by the SEC. *See Sacks*, 648 F.3d at 948. As a member of FINRA, Defendants contend that H.C. is subject to FINRA Rule 2241(b)(1), which regulates "Research Analysts and Research Reports." The rule requires that member organizations

> Establish, maintain and enforce written policies and procedures reasonably designed to identify and effectively manage conflicts of interest related to . . . the preparation, content and distribution of research reports . . . and the interaction between research analysts and those outside of the research department, including investment banking . . .
> Such policies and procedures must, among other things: prohibit prepublication review, clearance or approval of research reports by persons engaged in investment banking services activities and restrict or prohibit such review, clearance or approval by other persons not directly responsible for the preparation, content and distribution of research reports . . . establish information barriers or other institutional safeguards reasonably designed to ensure that research analysis are insulated from the review, pressure or oversight by persons engaged in investment banking services activities . . . .

FINRA Rule 2241(b), Ex. H to Itzkowitz Decl, Dkt. 44-10. This mandated separation between the research and investment banking arms of a financial institution like H.C. is sometimes referred to as the "Chinese Wall."

FINRA also requires member organizations to disclose in research reports if the member organization expects to receive compensation for investment banking services from the subject of the report within three months of the publication. *See* FINRA Rule 2241(c), Ex. H to Itzkowitz Decl., Dkt. 44-10.

            c.    MannKind's Market Performance Prior to the Report

On August 7, 2017 -- two months prior to Livnat's issuance of the Report on October 10, 2017 -- MannKind held an earnings call in which it stated that it expected the FDA to approve a label change

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

for Affreza that would be beneficial. On October 2, 2017, MannKind announced the FDA approval of the labeling change that had been anticipated during the August 7 earnings call. *See* Ex. L to Itzkowitz Decl, Dkt. 44-14. Defendants submitted a chart detailing MannKind's historical stock performance, which shows that it increased from $1.22 on August 4, 2017 (prior to the earnings call) to $4.96 on October 5, 2017 (after the FDA approval was announced). *See* Ex. J to Itzkowitz Decl., Dkt. 44-12 ("Stock Chart"). The chart also shows an increase in trading volume from 1,371,940 shares on August 4, 2017 to 75,748,880 shares on October 5, 2017. *Id.*

        d.   The Report, the Offering, and the Market Reaction

As noted, Livnat issued the H.C. report on October 10, 2017. *See* Ex. O to Itzkowitz Decl, Dkt. 44-17 ("Report"). The Report included a buy recommendation for MannKind stock and a $7 target share price. It justified the recommendation, in part, by stating that the "[n]ew Affreza label should allow the product benefits to shine." *Id.* at 2. The Report also warned that "near term recapitalization is expected," and that the dilution in stock price associated with such a recapitalization was "assumed" in the valuation provided in the Report. *Id.* at 3. The Report also included the following disclosure:

> [H.C.] did not receive compensation from MannKind Corp. . . . for investment banking services within twelve months before, but will seek compensation from the companies mentioned in this report for investment banking services within three months following publication of the research report.

*Id.* at 28.

On October 10, 2017, MannKind stock closed at $6.71 per share. *See* Ex. J to Itzkowitz Decl., Dkt. 44-12 at 4. This marked the highest closing price for MannKind since April 29, 2016, which was more than a year prior to the August 2017 earnings call. *See id.* at 9. As noted above, on the evening of October 10, 2017, both the Offering and H.C.'s role as the placement agent for MannKind were announced. *See* FAC ¶ 39. On October 11, 2017, MannKind's stock price dropped to $5.47 per share. *See* Ex. J to Itzkowitz Decl., Dkt. 44-12.

The table below summarizes the relevant events, along with MannKind's stock price and trading volume before and after certain events:

| DATE | STOCK PRICE | TRADING VOLUME |
|---|---|---|
| 07/11/2017 | $1.16 | 1,189,025 |
| 08/04/2017 | $1.22 | 1,371,940 |
| 08/07/2017 | **H.C. EARNINGS CALL** | |
| 08/08/2017 | $1.15 | 2,033,558 |
| 08/16/2017 | $1.43 | 3,544,843 |
| 08/25/2017 | $1.55 | 4,371,511 |
| 09/01/2017 | $1.87 | 7,802,179 |
| 9/15/2017 | $2.29 | 3,182,068 |
| 10/02/2017 | **MANNKIND ANNOUNCES FDA APPROVAL** | |
| 10/02/2017 | $2.34 | 9,296,160 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
|---|---|---|---|
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

| | | |
|---|---|---|
| 10/03/2017 | $2.82 | 12,854,530 |
| 10/04/2017 | $3.54 | 18,937,630 |
| 10/05/2017 | $4.96 | 75,748,880 |
| 10/06/2017 | $5.03 | 36,095,670 |
| 10/09/2017 | $5.33 | 13,134,360 |
| 10/10/2017 AM | **H.C. / LIVNAT REPORT ISSUED** | |
| 10/10/2017 | $6.71 | 48,144,070 |
| 10/10/2017 PM | **MANNKIND / H.C. OFFERING ANNOUNCED** | |
| 10/11/2017 | $5.47 | 33,512,510 |
| 10/31/2017 | $3.29 | 2,790,695 |
| 11/30/2017 | $3.11 | 2,548,293 |
| 12/29/2017 | $2.32 | 2,443,403 |

**III.     Analysis**

   A.     Legal Standards

      1.     General

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for failure to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

      2.     Securities Act

Section 10(b) of the Exchange Act makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or . . . for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5, which is based on this statute, provides that it is unlawful to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 CFR 240.10b-5.

In Rule 10b-5 private action, a plaintiff ordinarily must prove each of the following: (i) a material misrepresentation or omission of fact; (ii) scienter by the person who made the statement or caused the omission; (iii) the statement or omission was in connection with the purchase or sale of a security; (iv) transactional and loss causation; and (v) economic loss. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Deceptive conduct is also actionable under Rule 10b-5. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158 (2008) (there is no requirement under Rule 10b-5 of a "specific oral or written statement . . . . [c]onduct itself may be deceptive").

A complaint advancing claims of securities fraud must satisfy the heightened pleading requirements of both Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA*"). In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires that a complaint alleging fraud "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when where, and how' of the misconduct charged.'") (internal quotations and citations omitted). The "more exacting pleading requirements" of the PSLRA require that the complaint plead with particularity both falsity and scienter. *Zucco Partners*, 552 F.3d at 990.

In pleading falsity under these standards, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). To plead scienter under these standards, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). Scienter includes "intent to deceive, manipulate, or defraud," and "deliberate recklessness." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, 856 F.3d 605, 619 (9th Cir. 2017) (citation omitted).

    B.    Application

        1.    <u>Overview of the Basis for the Claims and the Motion</u>

The FAC alleges that Defendants engaged in a fraudulent scheme to inflate artificially MannKind's stock through the following conduct: (i) issuing the Report on the morning of October 10, 2017; (ii) omitting from the Report any mention of the pending Offering, and Defendants' involvement as placement agent; and (iii) finalizing and announcing the Offering on the evening of October 10, 2017. *See* FAC ¶ 1. Plaintiff alleges that the misleading nature of the Report is evidenced by the significant increase in MannKind's stock price during trading on October 10, 2017. During that time period, the Report was publicly available, but information about the Offering was not. On October 11, 2017, after the Offering was disclosed, the price of the stock declined substantially. *Id.* ¶ 6.

Defendants argue that the FAC should be dismissed because for the following reasons: (i) it fails to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

allege a materially misleading statement; (ii) it fails adequately to allege scienter; and (iii) it fails adequately to allege loss causation.

  2.  <u>Group Pleading</u>

Defendants argue that the FAC should be dismissed pursuant to the prohibition against "group pleading" under Fed. R. Civ. P. 9(b). Thus, Defendants contend the FAC "lump[s] . . . together in an undifferentiated mass" Livnat, Viklund, and H.C. without identifying the role of each Defendant in the alleged fraud. Dkt. 44-1 at 19.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal citations omitted). Therefore, to plead fraud against multiple defendants, "a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

The FAC does not violate the group pleading rule. It alleges that Livnat authored and issued the Report, in his capacity as an analyst for H.C. FAC ¶¶ 30-33.[7] It also alleges that Viklund, as the CEO of H.C., served as the primary contact for both H.C.'s research team, of which Livnat was a member, and H.C.'s investment team, which was responsible for the issuance of the Offering. Based on this foundation, it alleges that he had control and authority over both the Report and the Offering. *See id.* ¶¶ 14, 79-80.[8] The FAC does not contain the type of "everyone did everything" allegations that warrant the application of the group pleading rule. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). Rather, the FAC sufficiently alleges "specific misconduct" attributable to both Livnat and Viklund, each of whom allegedly acting as an agent for H.C. *See Swartz*, 476 F.3d at 765.

  3.  <u>Material Misrepresentation or Omission of Fact</u>

The FAC alleges that the buy recommendation in the Report as well as its $7 target price were materially misleading. The basis for this position is that Defendants failed to disclose in the Report the pending Offering, which was announced just a few hours after the Report was published. *See* FAC ¶¶ 30-33. The SAC also alleges that the Report stated that Defendants "expect[ed] MannKind to soon recapitalize" and that H.C. "will seek compensation" from MannKind for the investment banking services it performed for MannKind. *Id.* FAC ¶¶ 34, 46. The FAC alleges that these statements were misleading because the Report failed to mention the Offering, and H.C.'s role in it, notwithstanding that each would be announced the same evening the Report was published. *See* Dkt. 49 at 15.

Defendants contend that, although such allegations may show that the Report was incomplete, Rule

---

[7] The Report includes the following disclaimer: "I, Oren Livnat, CFA, certify that 1) all of the views expressed in this report accurately reflect my personal views about any and all subject securities or issuers discussed . . . ." Ex. O to Itzkowitz Decl, Dkt. 44-17 at 28.

[8] Plaintiffs do not advance a claim against Viklund for primary liability under Section 10(b) or Rule 10b-5. Instead, the FAC alleges that he has liability under Section 20(a) as a control person.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

10b-5 prohibits "only misleading and untrue statements, not statements that are incomplete." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). However, *Brody* acknowledges that an omission can be actionable if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* (citing *McCormick v. The Fund American Cos.*, 26 F.3d 869, 880 (9th Cir. 1994).

Under *Brody*, to satisfy the materiality element of a Section 10(b) or Rule 10b-5 claim, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 794 (9th Cir. 2017) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-22 (1988)). This includes statements that are literally true, but misleading in the context in which they are provided. *See id.* at 796 (citing *Brody*, 280 F.3d at 1006 ("[A] statement that is literally true can be misleading and thus actionable under the securities laws.")).

The FAC adequately alleges that, because the Report failed to disclose the Offering, which was announced hours later, it was misleading as to the "state of affairs" it described with respect to MannKind's stock price. *Brody*, 280 F.3d at 1006. Thus, a reasonable investor's interpretation of the buy recommendation and the $7 target price would have been affected by knowledge that, in addition to the FDA approval and other positive developments regarding MannKind disclosed by the Report, a stock Offering that would dilute the stock price would be announced on the same day the Report was issued. As Plaintiffs point out, "what investors would pay as much as $6.96 for a stock on October 10, 2017 if they knew that the stock could be purchased at a much lower price the very next day?" Dkt. 49 at 17.

The foregoing allegations give rise to an inference beyond that the Report was "incomplete," allegations of which the Ninth Circuit has held to be insufficient. *See Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014). In *Intuitive Surgical*, investors alleged that a distributor of robotic surgery equipment misrepresented the company's financial situation by failing to disclose certain internal trends that would not have supported the rosy outlook presented in the company's annual report. *See id.* at 1056-57. Because the annual report "accurately reflect[ed] the company's growth" and "[did] not purport to speak to any trends in [the company's] growth or revenues," it was neither incomplete nor misleading. *Id.* at 1061. Similarly, *Atossa* considered whether the statements by the developer of breast cancer screening products about FDA approval of one of its products were actionable under Section 10(b). *See Atossa*, 868 F.3d at 796-97. *Atossa* rejected the plaintiffs' arguments that the statements were misleading because they implied that the FDA had cleared the defendants' product for certain uses that had not been addressed by the FDA. This conclusion was based on the determination that the complaint in *Atossa* failed to allege with specificity the reasons that the "general statements" concerning FDA clearance of defendant's product were misleading. *Id.* at 797. Accordingly, plaintiffs had not adequately alleged with sufficient particularity that the statements at issue represented that the product had been cleared for one purpose, when it actually had only been cleared for a different one. *Id.* at 796.

*Intuitive Surgical* and *Atossa* do not support Defendants' position in this action. The FAC alleges that the Report contained certain statements, including the buy recommendation, the $7 target price, that MannKind would ultimately recapitalize, and that H.C. would, at some point within the next three months, seek compensation for its investment banking services. It also alleges that these statements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

were misleading because the Report failed to disclose the Offering that would become public that evening. Thus, the Report "spoke" to MannKind's recapitalization and H.C.'s role therein, but did not make an appropriate disclosure. *See also In re Yahoo! Inc. Sec. Litig.*, 611 Fed. Appx. 387, 389 (9th Cir. 2015) (dismissing securities fraud claims based on reports of a parent company's market value that "do not include estimates of the value" of the company's privately held subsidiaries, because such reports "neither stated nor implied anything regarding" a subsidiary's value.). Here, the Report stated that MannKind stock should be valued at $7, and thereby implied that any future recapitalization that would negatively affect that valuation was not imminent. Although the allegedly actionable statements in the Report were true, they nevertheless "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody*, 280 F.3d at 1006.

Defendants' argument that the alleged omissions are not actionable because no duty existed to disclose the pending Offering is also unpersuasive. Section 10(b) and Rule 10b-5 do not create an affirmative duty to disclose all material information. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011); *see also Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("A duty to disclose under § 10(b) does not arise from the mere possession of [material] nonpublic market information."). Here, however, a duty to disclose the Offering, which was allegedly expected to dilute and lower MannKind's stock price, was triggered by the Report's recommendations to investors to buy MannKind, and that $7 was an appropriate price target. This is because, in the light of the circumstances under which the Report was issued, disclosure of the offering was necessary to make the Report not misleading. *See Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b-5(b)).

    4.    <u>PSLRA Safe-Harbor</u>

Defendants next contend that, even if the Report's failure to disclose the Offering was material and misleading, they are shielded from liability because the Report included forward-looking statements. The PSLRA creates a safe harbor for "forward-looking" statements, *i.e.,* those that contain "a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items." 15. U.S.C. § 78u-5(i)(1)(A). The safe harbor provision states in relevant part:

> A person . . . shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that . . . (A) the forward-looking statement is (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or (ii) immaterial . . . .

15 U.S.C. § 78u-5(c)(1).

A forward-looking statement that is material and unaccompanied by cautionary language may still fall within the safe harbor if the plaintiff fails to "allege facts that would create a strong inference that the defendants made the forecast(s) at issue with 'actual knowledge . . . that the statement was false or misleading." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010); 15 U.S.C. § 78u-5(c)(1)(B). If, however, a forward-looking statement is accompanied by meaningful, cautionary statements, "then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable regardless of the plaintiff's showing of scienter." *In re Cutera*, 610 F.3d at 1112.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

As discussed above, the theory of liability advanced through the FAC is not premised only on the statements in the Report. Rather, it contends that the Report was misleading because it omitted a disclosure of a present fact -- the forthcoming announcement of the Offering, which was expected to dilute MannKind's stock price. The PSLRA safe harbor for forward-looking statements does not apply in such circumstances. *See, e.g.*, *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1126 (S.D. Cal. 2012) ("[T]o the extent Plaintiffs [] challenge Defendants' alleged *omission of present facts* with respect to the challenged statements, the PSLRA's safe harbor does not apply.") (emphasis in original); *Loftus v. Primero Mining Corp.*, 230 F. Supp. 3d 1209, 1225 (C.D. Cal. 2017) ("[B]ecause Plaintiffs allege that the way in which Primero's representations about future tax projections were misleading was by omitting already-existing historical facts . . . these representations are not protected by the safe harbor provisions."); *In re CV Therapeutics, Inc.*, No. 03-cv-03709-SI, 2004 WL 1753251, at *10 (N.D. Cal. Aug. 5, 2004) ("The fact that defendants used [] inadequately disclosed historical facts to support unsound projections does not shield their alleged misrepresentations as forward-looking statements.").

For the foregoing reasons, the FAC adequately alleges that the Report's omission of the pending Offering made misleading its statements that investment in MannKind was appropriate. Such an omission is not "a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items," 15. U.S.C. § 78u-5(i)(1)(A), but rather a contemporaneous fact. Accordingly, the forward-looking statements safe harbor does not apply.

     5.     <u>Scienter</u>

As noted above, the FAC adequately alleges that the Report was materially misleading in light of its omission of the pending Offering and the anticipated impact it would have on MannKind's stock price. However, such a misrepresentation is actionable only if Plaintiffs have also alleged, with particularity, that Defendants issued the Report with scienter as to its false statements or material omissions. *See Zucco Partners*, 552 F.3d at 990. To establish scienter, Plaintiffs must allege that Defendants acted with "intent to deceive, manipulate, or defraud," or were otherwise deliberately reckless. *City of Dearborn Heights*, 856 F.3d at 619 (quoting *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)). "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness" required to show scienter. *In re VeriFone*, 704 F.3d at 701. Accordingly, in order to survive a motion to dismiss, a strong inference of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

The FAC does not allege with sufficient particularity that the Report was issued by Defendants with scienter, *i.e.,* knowing that it would mislead potential investors. The FAC first alleges that knowledge of the alleged fraud is "evidenced by the fact that the final terms of the Offering were announced publicly on October 10, 2017," the same day the Report was published. FAC ¶ 46. Therefore, it is alleged that H.C. must have "reviewed the preliminary prospectus, satisfied its due diligence obligations, marketed the Offering to investors, completed negotiations with MannKind, signed off on the final Offering document, and negotiated and established a formula for pricing the [O]ffering." *Id.* The allegation that certain unidentified H.C. employees would have had to perform certain diligence with respect to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
|---|---|---|---|
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

Offering prior to its announcement is insufficient to establish a strong inference of scienter. *See Tellabs*, 551 U.S. at 324; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) (speculative inferences of suspicious cannot, on their own, establish scienter).

Furthermore, "a corporation 'can only act through its employees and agents' and can likewise only have scienter through them.'" *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominon Bank*, 250 F.3d 87, 101 (2d Cir. 2001)). H.C. cannot "know" or "intend" anything, it is the intent of its employees that must be imputed to it through traditional agency principles. *See id.* at 475-76; *see also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990) (a corporation is responsible for a corporate officer's fraud committed "within the scope of his employment" or "for a misleading statement made by an employee or other agent who has actual or apparent authority."). Plaintiff has failed to allege, with particularity, that any agents of H.C. involved in the publication of the Report had the requisite scienter that can be imputed to H.C. Thus, it has not been alleged that Livnat, who wrote the Report, knew the Offering was imminent when he published the Report. *See Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("[T]he PSLRA requires [plaintiff] to plead scienter with respect to those individuals who actually made the false statements . . . ."); *In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) ("It is not enough to establish fraud on the part of a corporation that one officer makes a false statement that another officer knows to be false. A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter, i.e., knows that the statement is false, or is at least deliberately reckless as to its falsity, at the time that he or she makes the statement.") (citations omitted).

Defendants add that the "Chinese Wall," *i.e.,* the FINRA regulations mandating that its member organizations separate their investment and research arms, suggest that Livnat could not have known that the Offering was pending. Although the existence of such regulations does not confirm that they were followed, that H.C. was under a statutory and regulatory obligation to have such information barriers to protect against the misuse of material nonpublic information, *see* 15 U.S.C. § 78o(g), at minimum gives rise to the inference that Livnat did not know the Offering was to be announced on October 10, 2017. Plaintiffs have not alleged any facts giving rise to a strong inference of Livnat's scienter that is "at least as compelling" as the one supported by H.C.'s regulatory obligations. *See Tellabs*, 551 U.S. at 324. Also unpersuasive is Plaintiff's argument that the inclusion of cautionary language in the Report as to future recapitalization and investment banking transactions suggests Defendants' knowledge of the pending offering. Dkt. 49 at 12, 16. "Boilerplate" language required by a regulation or statute "add[s] nothing to the scienter calculus." *Zucco Partners*, 552 F.3d at 1003-04; *see also Glazer*, 549 F.3d at 747-48. The FAC fails to allege with the requisite particularity facts giving rise to a strong inference of scienter as to Livnat.

The FAC alleges that Viklund was the "primary contact" for both Livnat's research team and H.C.'s investment banking team. *See* FAC ¶ 47. On that basis, it is alleged that "Viklund knew (1) the price target that was set forth in . . . the Report; (2) the formula for pricing the offering; (3) the Report's vague reference to a deal between MannKind and Wainwright over the next three months; (4) the Report's expectation of "near-term recapitalization;" and (5) the timing of the Offering, and of MannKind's public announcement of the Offering." *Id.* Such allegations are not sufficiently specific to give rise to a "strong inference of deliberate recklessness," *Verifone*, 704 F.3d at 701, much less an "intent to deceive,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

manipulate, or defraud." *City of Dearborn Heights*, 856 F.3d at 619. Furthermore, it is not alleged that Viklund had any direct involvement with the issuance of the Report. This is consistent with the absence of an allegation that he has liability under Section 10(b) or Rule 10b-5. As noted, corporate scienter may not be established by imputing the false statements of one agent (Livnat) with the alleged scienter of another agent (Viklund). *See Apple Computer*, 243 F. Supp. 2d at 1023; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672, 2017 WL 6041723, at *8 (N.D. Cal. Dec. 6, 2017) ("[L]iability for fraud cannot be imputed to a corporation without evidence that an agent of the corporation who participated in making the challenged statements did so with scienter . . . ."). For the foregoing reasons, the FAC fails to allege with sufficient particularity facts that give rise to a strong inference of scienter of Livnat or Viklund that can be imputed to H.C.

Plaintiffs also argue that H.C.'s scienter is adequately alleged under a theory of "collective scienter." *See Glazer*, 549 F.3d at 743 (citing *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008)). Collective scienter has been deemed sufficient in other Circuits. *See Dynex*, 531 F.3d at 195; *Makor Issues & Rights v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) ("[I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who disseminated the fraud."). The Seventh Circuit illustrated the concept by presenting the following hypothetical:

> Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

513 F.3d at 710.

This principle is not a sufficient basis to show scienter based on the allegations of the FAC. *First,* the Ninth Circuit has not adopted the theory of collective scienter. *See Glazer*, 549 F.3d at 743; *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) ("In the Ninth Circuit, we have not previously adopted a theory of collective scienter.") (internal citations and alterations omitted). *Second*, the allegations in the FAC -- the Report's failure to mention the Offering -- are not "so dramatically false" to warrant a strong inference that at least some corporate officials knew that it would mislead investors. *NVIDIA*, 768 F.3d at 1063. *Finally*, any inference that could be drawn from the temporal proximity of the Report and the Offering is offset by Defendants' representations that FINRA regulations and internal policies meant that corporate officials aware of the Report's recommendations were not aware of the Offering. Therefore, although collective scienter "might be appropriate in some cases," *see Glazer*, 549 F.3d at 744, the allegations in the FAC do not warrant its application here.

Plaintiffs also argue that Defendants were motivated by their desire to maximize MannKind's stock price in the period leading up to the Offering, and that raises a strong inference of scienter. *See* Dkt. 49 at 24. However, an alleged motive to commit fraud is not alone sufficient to establish a strong inference of scienter. *See VeriFone*, 704 F.3d at 702. Additionally, allegations of "routine corporate objectives," including the motivation to boost profitability and stock prices in anticipation of an IPO or other form of stock offering, are not sufficiently particularized to meet the heightened pleading standards. *Webb v. Solarcity Corporation*, 884 F.3d 844, 856 (9th Cir. 2018); *see also Lipton v. Pathogenesis Corp.*, 284

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
|---|---|---|---|
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

F.3d 1027, 1038 (9th Cir. 2002); *Schueneman*, 840 F.3d at 709 n.8 ("We have cautioned securities plaintiffs that, absent some truly compelling allegations, we will not consider routine business behavior (like firing people or raising capital) to serve as the basis for scienter.")).

Finally, Plaintiffs contend that, because H.C.'s investment banking and research services collectively, comprise H.C.'s core business, it "belies common sense" that Viklund would have been unaware that the Report was going to be published on the same day that the Offering was going to be announced. *See* Dkt. 49 at 26-27. Pursuant to the so-called "core operations doctrine," the PSLRA's pleading requirements "may be satisfied, in certain circumstances, by 'a scienter theory that infers that facts critical to a business's 'core operations' or an important transaction are known to a company's key officers.'" *NVIDIA*, 768 F.3d at 1063 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783-84 (9th Cir. 2008)). An inference based on the core operations doctrine may be considered "when weighing a complaint's allegations of scienter holistically." *Id.* However, "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *South Ferry*, 542 F.3d at 785 (internal citations and quotation marks omitted). The bare allegation that H.C.'s research and investment banking personnel comprised H.C.'s core business does not alone establish that information about the Report, and specifically its omission of the Offering, was conveyed to Viklund prior to its publication.

"[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency," a district court "must engage in a comparative evaluation; it must consider, not only the inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 323-24. The inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23 (emphasis in original); *see also Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). Plaintiffs argue that a reasonable inference from the allegations of the FAC, taken as a whole, is that Defendants published the Report on October 10, when they knew that the Offering would be announced later that day, and with the intent artificially to inflate MannKind's stock price in anticipation of the Offering, which would reduce the price. Under *Tellabs*, this inference must be weighed against other reasonable inferences raised by Defendants. These include that Viklund had no knowledge of the Report, or the projections contained in it before it was published, and that Livnat was shielded from any information regarding the Offering pursuant to the Chinese Wall, and had reasonable bases for the buy recommendation and the $7 target price. *See, e.g. Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1070 (N.D. Cal. 2014) (projections or statements of belief are only actionable if it is not actually believed, there is no reasonable basis for the belief, and "the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy.") (citing *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir. 1994)).

For the foregoing reasons, the FAC fails to allege with particularity facts that raise a strong inference of scienter, as to any of the Defendants.

        6.    <u>Loss Causation</u>

The loss causation element of a Section 10(b) claim requires pleading a causal connection between the alleged material misrepresentation and the loss suffered. *See Dura Pharm., Inc. v. Broudo*, 544 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07926 JAK (ASx) | Date | December 11, 2018 |
|---|---|---|---|
| Title | Daniela Prodanova v. H.C. Wainwright & Co., LLC, et al. | | |

336, 342 (2005). The heightened pleading standards under Rule 9(b) apply to all elements of a securities fraud claim, including loss causation. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

Because it has been determined that the FAC fails adequately to plead scienter, the question of whether the FAC adequately pleads loss causation need not be reached. *See Zucco Partners*, 552 F.3d at 987 n.1.

       7.    Section 20(a) Control Person Liability Claim

To establish a prima facie case under Section 20(a) of the Exchange Act, a plaintiff must prove a primary violation of federal securities laws and that an individual defendant exercised actual power or control over the primary violator. *See In re Arrowhead Pharm., Inc. Sec. Litig.*, No. 16-cv-08505-PSG, 2017 WL 5635422, at *13 (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)); *see also* 15 U.S.C. § 78t-1(a). Therefore, "Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to plead a primary violation of [S]ection 10(b)." *Zucco Partners*, 552 F.3d at 990.

Because Plaintiffs have failed adequately to allege a primary violation of Section 10(b), the derivative, Section 20(a) claim against Viklund is insufficient.

**IV.**    **Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**, without prejudice. The Request to Strike is **GRANTED IN PART**. Any amended complaint shall be filed by December 26, 2018.

The parties are also instructed to meet and confer and file, no later than January 7, 2019, an updated joint report providing a revised schedule of pretrial and trial dates. If the parties adhere to the dates proposed in the joint report filed on April 30, 2018 (Dkt. 55), a report so stating shall be filed by January 7, 2019.

**IT IS SO ORDERED.**

                                         :

Initials of Preparer    ak